THE PEOPLE *v*. DÍAZ.

APPEAL from the District Court of San Juan.

No. 212.—Decided February 1, 1910.

CRIMINAL LAW—VOLUNTARY MANSLAUGHTER—SELF-DEFENSE.—Where from the
evidence nothing appears to reveal an act of real aggression on the part
of the deceased, a verdict of the jury finding that the defendant was not
justified in killing the deceased in self-defense is in accordance with law.

ID.—SELF-DEFENSE.—A mere suspicion of the commission of a crime is not suffi-
cient to justify homicide on the ground of self-defense.

ID.—SELF-DEFENSE—VERDICT OF JURY.—Where a jury, after receiving full in-
structions to find that homicide was committed in self-defense and to weigh
the evidence introduced at the trial, returns a verdict which is not shown
ro have been induced by partiality, passion, or prejudice, this court will up-
hold such verdict.

ID.—SELF-DEFENSE—CARRYING WEAPONS.—The fact that the accused carried a
revolver, but it not being shown for what other lawful purpose he carried it,
and the deceased not having carried any weapon whatsoever, are things which
it was proper for the jury to consider.

The facts are stated in the opinion.
*Mr. Jesús M. Rossy, fiscal,* for respondent.
*Mr. Manuel F. Rossy* for appellant.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

This cause originated in the District Court of San Juan
upon an information charging the defendant, Arturo Díaz,
with the crime of voluntary manslaughter, in that in the town
of Toa Baja, within the judicial district of the inferior court,
one day in the month of March, 1908, the defendant "upon a
sudden quarrel" fired his revolver at Alvaro Palacios, unlaw-
fully killing him.

The defendant was tried by a jury and the latter, after having heard all the evidence presented and having heard the charge of the trial judge, returned a verdict holding Arturo Díaz guilty of the crime of involuntary manslaughter, and on October 6, 1908, the judge sentenced him to imprisonment in the penitentiary for three years at hard labor, with allowance of the provisional imprisonment suffered.

The defendant took an appeal from said judgment, and the record contains a statement of facts approved and signed by the judge.

All the efforts of counsel for the appellant, both in his brief as in his oral argument at the hearing, have been directed to convincing this Supreme Court that Arturo Díaz acted in self-defense being forced to use the revolver he carried, quoting in his support subdivision three of section 209 of the Penal Code.

The assailant, Arturo Díaz, was overseer of the Fidela estate belonging to Ferdinand Cesteros and was conducting the sugar-cane, which was to be weighed and ground, to the Constancia Central, of which José Ricarte is overseer, who had under his orders the victim, Alvaro Palacios, in charge of the scale.

According to the statement of facts in this case, witnesses both for the prosecution and defense have testified, and it appears that the first quarrel between Palacios and Díaz occurred at the scale on the Constancia Central because, according to Palacios, the sugar-cane which Díaz delivered on March 8, 1908, was very dirty.

Let us see what was the attitude of Palacios with respect to Díaz to impel the latter to fire at him twice with his revolver, once when he was facing him and then again in the back, causing almost instant death.

Policeman Obdulio López overheard Palacios say to Díaz at the scale, "Yes, I am '*guavo*' (I am valiant), and I know what I am doing; you are not a man for me, and if you have any objection to make, go to the principal because the sugar-

cane is worthless," and the same witness for the prosecution saw Palacios throw Díaz to the ground from the balcony of the house of the Constancia Central.

Juan Atanasio Nevárez, a witness for the defense, who was also at the scale, testified that he heard Palacios say to Díaz, "You appear to be ready for a fight and I am a fighting cock myself and I am ready to fight you with a knife, a razor or a sword, as I have shown I could do in Cuba," Díaz replying, "that he had not come to fight but to get his papers to give them to his principal." This witness also affirms that Palacios threw Díaz down the steps from the balcony.

Enrique Sepúlveda and Pedro Ortiz also testify to the last fact, which they witnessed from the scale, and they also mention more or less strong or insulting language used by Palacios against Díaz.

It is to be assumed that however near was the scale where these witnesses stood, the parlor leading to the balcony of the dwelling house of the Constancia Central was nearer, and in said parlor was the witness for the prosecution, José Ricarte, with Ferdinand Cesteros, and the former said that as the balcony ends with a four-step stoop, Díaz fell from it to the ground against a carriage, adding that Palacios, upon seeing Díaz in the parlor, said to him "that if he saw him again on the estate he would seize him and put him out," and Ricarte, as the overseer of the Constancia estate and consequently the chief of Palacios, rebuked him for his way of speaking, and after this Díaz began to run, being followed by Palacios at a fast pace.

All of the witnesses agree that Díaz fired twice at Palacios with his revolver.

Dr. Vélez López, who conducted the autopsy of the deceased, found two bullet wounds, one of which entered from the front on the left side penetrating the lung on that side and the ventricle of the heart, which wound was fatal and almost instantaneously killed Palacios, by causing an internal hemorrhage; another slight wound in the back por-

tion of the right leg and another in the front portion, deducing from the appearance and nature thereof that the bullet entered from behind and came out in front. To questions of counsel for the defense, this doctor said that the constitution of Palacios was athletic, that he was of tall stature and very strong.

In the testimony of the witnesses to whom we have referred, which sets forth more minutely · the quarrel between Palacios and Díaz, we find absolutely nothing which reveals an act of actual and decisive assault on the part of Palacios with intent to commit a felony or to do some great bodily injury to Díaz with the imminent danger of·such design being accomplished.

Section 210 of the Penal Code in force provides that a·bare fear of any of the offenses mentioned in subdivisions two and three of section 209, to·prevent which homicide may be lawfully committed, is not sufficient to justify it; but the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone.

In the case of *The People of Porto Rico* v. *Facundo Abreu Caban*, (5 P. R. Rep., 217) decided February 2, 1904, we said:

"In dealing·with homicide punishable under section 204 of the Penal Code, a verdict of guilty against the defendant having been returned, it must .be assumed that the jury did not find the homicide to have been justified because the attending circumstances were not sufficient to excite the fears of a reasonable person, nor did it consider that the defendant had acted under the influence of such fears alone, as prescribed by section 210 of the Code."

This ·wise doctrine is the more applicable to this case, as counsel for the defense himself delivered to the trial judge certain written instructions, which the latter gave the jury, said instructions being real rules to determine the justification of homicide in self-defense; and as notwithstanding this, the jury was unable to reach a verdict of absolute acquittal,· we

must respect this determination reached upon facts which are not before us as a court of appeals.

There is nothing to show that this jury acted with partiality, passion, or prejudice, and if it be said that the evidence is conflicting, as to whether Palacios shoved Díaz from the balcony, as some witnesses allege, or whether Díaz fell when descending, as Ricarte alleges, whether Palacios ran after Díaz, or walked fast, the only one able to harmonize this conflict and decide in its mind for or against one affirmation or the other, is the jury, as we have heretofore said, because it sees the witnesses while they give their testimony and can fathom their gestures, their hesitation, their appearance, in fact everything which may lead them to a proper judgment. (See the following cases: *The People* v. *Díaz, alias Leña Verde,* [12 P. R. Rep., 141] decided March 6, 1907; *The People* v. *Ramos,* [15 P. R. Rep., 239] decided April 23, 1909.)

The fact that Palacios was tall and of athletic build is not, in itself, sufficient to justify the homicide, nor do we know the build and height of the aggressor, Díaz, in order to determine what advantage the former might have had over the latter.

What is evident, however, is that Díaz carried a revolver at the time, and it has not been shown for what other lawful purpose he carried it, and it has not been shown that the deceased carried any arms whatever.

All of this must have had some influence on the mind of the jury to restrain it within the limits of involuntary manslaughter of which it found Díaz guilty.

Let us respect this honest judgment and affirm the sentence based on said verdict, rendered on October 6, 1908, by the Judge of the District Court of San Juan, inasmuch as on the other hand an examination of the record does not show the commission of any material error.      *Affirmed.*

Chief Justice Hernández and Justices MacLeary, Wolf and del Toro concurred.